UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE DEBELLIS and EMMANUEL
RAYMOND,

               Plaintiffs,

       - against -

ALEX BIZE and CONTEMPORARY
STREETWEAR, LLC d/b/a CAVI INC.,

             Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 / 19 / 14
```

**ORDER**

11 Civ. 7113 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Plaintiffs Michelle Debellis and Emmanuel Raymond assert that Defendants Alex

Bize and Contemporary Streetwear, LLC violated the Fair Labor Standards Act, 29 U.S.C. § 201

et seq. ("FLSA") and New York Labor Law §§ 190 et seq., 215, and 652, by failing to pay them

earned wages, benefits, and bonuses, and by failing to pay them the minimum wage under New

York law. Debellis further contends that Defendants retaliated against her when she complained

about unpaid wages. (Cmplt. (Dkt. No. 1) ¶¶ 26-53) Defendants were served with the summons

and complaint in October 2011 but did not appear in this action. (Dkt. No. 10) On June 1, 2012,

this Court entered a default judgment against Defendants. (Id.) Exactly one year later – on June

1, 2013 – Bize appeared for the first time in this action and moved to vacate the default

judgment.[1] (Dkt. Nos. 19-21)

      For the reasons stated below, Bize's motion will be granted to the extent that the

default judgment will be vacated as to (1) Debellis's FLSA retaliation claim; and (2) Plaintiff's

damage claims. Bize's motion will otherwise be denied.

---

[1] A motion to vacate a default judgment under Fed. R. Civ. P. 55(c) and 60(b)(1) – for
"excusable neglect" – "must be made . . . no more than one year after the entry of the judgment."
Fed. R. Civ. P. 60(c).

## BACKGROUND

The Complaint was filed on October 7, 2011. (Cmplt. (Dkt. No. 1)) Plaintiffs allege that they were employed by Contemporary Streetwear, LLC (the "Company") between June 2010 and August 2011, and that Bize is the officer, director, shareholder, and control person of this entity. (Id. ¶¶ 7, 13, 18, 20) Plaintiff Debellis claims that she was hired as a merchandiser and designer for the Company's "Women's Collection," and Plaintiff Raymond contends that he was hired as a senior technological designer. (Id. ¶ 13) Both Plaintiffs allege that they began work at the Company in June 2010. (Id.)

Plaintiffs claim that they were told that they would be paid biweekly. (Id.) Beginning in November 2010, however, Defendants began paying Plaintiffs late and sporadically; for extended periods of time, Plaintiffs were paid no wages. (Id. ¶¶ 17-20) Debellis alleges that she received no wages for work performed between May 15, 2011 and her alleged termination on August 5, 2011. (Id. ¶¶ 19-20) Raymond states that he received no wages for work he performed in June and July 2011. (Id. ¶ 18)

Plaintiffs further allege that they "complained daily" – for four months – to the chief executive officer of the Company about the unpaid wages, and that they complained to Bize on a weekly basis. (Id. ¶¶ 21-22) Bize repeatedly promised Plaintiffs that they would be paid. (Id. ¶ 22) At the end of July 2011, Debellis again complained to Bize about the unpaid wages. (Id. ¶ 23) On August 5, 2011, Defendants terminated Debellis's employment, allegedly because of her complaints about the unpaid wages. (Id.)

Defendants assert that the Company is now defunct. (Bize Decl. (Dkt. No. 22) at ¶¶ 14, 19, 20, 22; see also Def. Br. (Dkt. No. 21) at 10)

Both Plaintiffs seek unpaid wages and unpaid minimum wages under the New York Labor Law and the FLSA. (Cmplt. (Dkt. No. 1) ¶¶ 26-38) Debellis raises retaliation claims under the New York Labor Law and the FLSA. (Id. ¶¶ 39-53)

## PROCEDURAL HISTORY

Bize was served in this action pursuant to N.Y. C.P.L.R. § 308(2). (See Dkt. No. 3) It is undisputed that a copy of the summons and complaint was left with an individual at Bize's Manhattan place of business on October 26, 2011, and that a copy of the summons and complaint was mailed to this same location no later than November 3, 2011. (Id.; see also Moriarty Aff. (Dkt. No. 9-1) ¶ 5) It is likewise undisputed that Defendants did not answer or otherwise move with respect to the Complaint, despite proper service. (Dkt. No. 9-4)

On May 18, 2012, Plaintiffs moved by order to show cause for a default judgment against Defendants. (Dkt. No. 7) In an order dated May 18, 2012, this Court scheduled a hearing on Plaintiffs' application for June 1, 2012 at 12:30 p.m. (Dkt No. 9) The Court's order directed that Plaintiffs serve a copy of the scheduling order on Defendants by overnight mail, by May 21, 2012. (Id.) There is no dispute that Defendants received notice of Plaintiffs' motion for a default judgment and of the hearing date.

On June 1, 2012, this Court conducted a hearing on Plaintiffs' motion for a default judgment. Defendants did not appear. Accordingly, this Court entered a default judgment. (Dkt. No. 10) The Court awarded Debellis $634,453.38 and Raymond $28,894.65. (Id.) These sums include liquidated and compensatory damages; pre-judgment interest; costs; and attorneys' fees. (Id.; Pltf. Statement of Damages) Debellis's award also includes $500,000 in damages related to her retaliation claims. (Dkt. No. 10; Pltf. Statement of Damages (Dkt. No. 9-3))

3

On August 16, 2012, after the entry of the default judgment, Plaintiffs' counsel sent post-judgment interrogatories regarding Defendants' assets to Bize's counsel, John Fazzio. (Moriarty Decl. (Dkt. No. 14) ¶¶ 4-5 & Exs. B, C)  On December 19, 2012, after receiving no response to the interrogatories, Plaintiffs' counsel contacted Fazzio about the interrogatories. (Id. ¶ 6 & Ex. D)  On January 17, 2013, Fazzio told Plaintiffs' counsel that he no longer represented Defendants.  (Id. ¶ 3)

On February 4, 2013, Plaintiffs moved to compel Bize to respond to the post-judgment interrogatories. (Dkt. No. 12)  No opposition was filed to Plaintiffs' motion.  On March 11, 2013, this Court granted Plaintiffs' motion to compel, and ordered Bize to respond to the interrogatories by March 18, 2013. (Dkt. No. 15)  The Court also awarded Plaintiffs attorneys' fees and costs related to the motion, and ordered Plaintiffs to provide supporting documentation for these expenses by March 18, 2013. (Id.)  The Court ordered that any opposition to Plaintiffs' application for attorneys' fees and costs was to be submitted by March 25, 2013. (Id.)

Bize never answered the interrogatories, nor did he file any opposition to Plaintiffs' application for attorneys' fees and costs.  On April 15, 2013, this Court issued an order granting Plaintiffs $5,287.50 in attorneys' fees and costs associated with their motion to compel Bize to answer post-judgment interrogatories. (Dkt. No. 18)

On June 1, 2013, Attorney Fazzio entered a notice of appearance on behalf of Bize and moved to vacate the default judgment. (Dkt. Nos. 19, 20)  Bize argues that his delay in appearing in this action was the result of excusable neglect. (Def. Br. (Dkt. No. 21) at 7)  Bize asks that the Court "vacate the default judgment entered against him in its entirety, but in particular, vacate the $500,000 of retaliation damages, for which no prima facie showing has

4

been made even in the pleadings, and . . . allow [him] to proceed with his defense." (Id. at 14)

In the alternative, Bize asks this Court to order that an inquest be conducted regarding the

damages Debellis suffered as a result of Defendants' retaliation.  (Id.)

## DISCUSSION

## I.   **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55(c) a court "may set aside a default

judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Rule 60(b) states that a judgment may be

vacated for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

"When deciding to vacate a default judgment under Rule 60(b), the court's

analysis is to be guided by three principles: '(1) whether the default was willful, (2) whether the

defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what

extent, vacating the default will cause the nondefaulting party prejudice.'" Concord Capital

Mgmt., LLC v. Brecka, No. 11 Civ. 5545 (DLC), 2013 WL 706170, at *5 (S.D.N.Y. Feb. 27,

2013) (quoting New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005)).  "To be willful, the

defendant's default must have been more than negligent." Id. (citing Green, 420 F.3d at 108).

"To demonstrate the existence of a meritorious defense, the defendant 'need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.'" Id. (quoting Green, 420 F.3d at 109). "The lack of a meritorious defense is a sufficient basis for a court's decision to deny a motion to vacate a default judgment." Id. (citing Green, 420 F.3d at 109). "The court should also consider whether the plaintiff will be prejudiced by a decision to vacate the default judgment in ways beyond mere delay." Id. "For instance, a plaintiff may be prejudiced if the defendant's delay has resulted in the loss of evidence, created increased difficulties for discovery, or provided greater opportunity for fraud and collusion." Id. (citing Green, 420 F.3d at 110). "It is for the defendant to show that there is a lack of prejudice to the plaintiff." Id. (citing Green, 420 F.3d at 110).

"Additionally, any motion made under Rule 60(b) must be brought within a 'reasonable time,' and motions under Rule 60(b)(1), (2), and (3) must be brought no more than one year after the entry of the judgment." Id. at *6 (citing Fed. R. Civ. P. 60(c)). "In determining whether a motion to vacate a default judgment has been brought within a 'reasonable time' a court should 'look at the particular circumstances of each case and balance the interest in finality with the reasons for delay.'" Id. (quoting Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (internal quotation omitted)). "With respect to motions made under Rule 60(b)(1), (2), and (3), 'the fact that a motion was made barely within the one-year limit gives the court the [p]ower to entertain it, [but] as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was "reasonable."'" Id. (quoting Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir. 1979)) (second alteration in original). "Moreover, where a party has offered 'no explanation to support its

6

substantial delay in attempting to reopen the default judgment' a court may find the delay unreasonable." Id. (citing Amoco Overseas Oil Co., 605 F.2d at 656; Dominguez v. United States, 583 F.2d 615, 617 (2d Cir. 1978)).

## II.    ANALYSIS

### A.    Willfulness of the Default and Reasonableness of the Delay

The Second Circuit and district courts in this Circuit have held that the willfulness of a default may suffice to deny a motion to vacate. See United States v. Manhattan Cent. Capital Corp., No. 94 Civ. 5573 (WK), 2001 WL 902573, at *4 (S.D.N.Y. Aug. 9, 2001) (quoting Westmark Dev. Corp. v. Century Sur. Co., 199 F.R.D. 491, 495 (W.D.N.Y. 2001)) ("Of the three criteria to be analyzed, 'willfulness is preeminent, and a willful default will not normally be set aside.'"); Barnes v. Printron, Inc., No. 93 Civ. 5085 (JFK), 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999) (quoting Schroeder v. Indorsky, No. 89 Civ. 2735, 1991 WL 161187, at *2 (S.D.N.Y. Aug. 12, 1991)) ("'[A] finding of willfulness obviates the need to continue the inquiry with respect the existence of a meritorious defense and prejudice to Plaintiff[s] . . .'"); United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.-Charco Redondo Butane, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989) ("[Defendant's] willful default is not the type of nonculpable conduct for which relief under Rule 60(b) is appropriate. Therefore, there is no need to consider whether [defendant] had a meritorious defense and the resulting prejudice to [plaintiff] if the default judgment is vacated."); see also Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1078 (2d Cir. 1995) ("[C]ourts should not set aside a default when it is found to be willful . . ."); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991) ("A default [judgment] should not be set aside when it is found to be willful."); Hernandez v. La Cazuela de Mari Rest., Inc., 538 F. Supp. 2d 528, 534 (E.D.N.Y.

2007) ("Despite any meritoriousness of an anticipated defense, a default judgment should not be vacated if the default was willful. . . . "). "[T]he more willful the default, the less deserving the motion [to vacate the default judgment]." Manhattan Cent. Capital Corp., 2001 WL 902573, at *5.

Bize argues that (1) "[t]he evidence shows at most negligence, even arguably gross negligence, in [his] failing to hire a lawyer, to file an Answer and to defend the default judgment application"; and (2) any neglect on his part is excusable because (a) as a result of the closing of his business, he has been unable to locate many of his records, (b) he has been under "extreme financial pressure," and (c) he has been "suffering from an ongoing gastrointestinal illness requiring multiple surgeries." (Def. Br. (Dkt. No. 21) at 9-11; Bize Decl. (Dkt. No. 22) ¶¶ 19-20)

Contrary to Bize's contentions, the record demonstrates that his default was willful and that his delay in filing a motion to vacate the default judgment is not reasonable. See Concord Capital Mgmt., 2013 WL 706170, at *7. Seven months passed between the time that Bize was served in this action and the entry of a default judgment. It is undisputed that Bize was properly served and that he received notice of the lawsuit. Indeed, Bize acknowledges that he allowed seven months to pass without retaining counsel or filing an answer. It is likewise undisputed that Bize was aware of the filing of a motion for a default judgment and of the hearing date. Despite being fully aware of these proceedings, Bize "never inquired into the status of this case with the Court, never requested an extension from the Court, and did not file the motion to vacate the default judgment until roughly a year later." Id.

8

Bize's disregard and contempt for this Court's proceedings is likewise apparent in

his failure to respond in any fashion to Plaintiffs' post-judgment interrogatories, and his decision

to ignore this Court's order to respond to those interrogatories.

Bize's conduct cannot be attributed to a lack of access to legal advice. Bize was

in contact with his attorney – John Fazzio – about this matter nearly a year before he moved to

vacate the default judgment. On June 18, 2012, one of Mr. Fazzio's colleagues – Deon

Goodman – sent the following email to Plaintiffs' counsel:

> Good Afternoon,
>
> I am writing on behalf of John Fazzio, who has recently begun representing Alex
> Bize in several matters.
>
> It has come to our attention that a default judgement [sic] has been entered on
> behalf of your clients Michelle DeBellis and Emmanuel Raymond. In response to
> this judgment Mr. Bize plans to file a motion to vacate the default judgment along
> with an answer so that the case can [be] decided on it[s] merits. In order to do
> this we are asking that you email a courtesy copy of the complaint that you filed
> against Mr. Bize on behalf of Ms. DeBellis.
>
> In addition to a copy of the complaint filed on behalf of Ms. DeBellis we would
> also ask that you forward a copy of the complaint filed on behalf of Huseyin
> Barkin Eren as well so that we [may] prepare a formal answer for this matter as
> well.
>
> Thank you for your time.
>
> Deon Goodman

(Moriarty Decl. (Dkt. No 24), Ex. C) Plaintiffs' counsel provided Mr. Fazzio with copies of the

Complaint in June 2012 – and again in December 2012 – and contacted him about possible

settlement and post-judgment discovery during this time, but Bize never took any action with

9

respect to the default judgment.[2] (Id., Exs. D-F)  Bize also offers no explanation as to why he

waited a year before moving to vacate the default judgment, filing his Rule 60(b)(1) motion on

the day that the one-year period applicable to that motion was set to expire.  In sum, the record

demonstrates that Bize was well aware of every aspect of these proceedings, deliberately chose

to ignore his responsibilities, and then unreasonably delayed filing his motion to vacate the

default judgment.

           The facts here are similar to those in United Bank of Kuwait PLC v. Enventure

Energy Enhanced Oil Recovery Associates-Charco Redondo Butane, 755 F. Supp. at 1205, in

which the court concluded that – in light of the defendant's willfulness – there was "no need to

consider whether [defendant] had a meritorious defense and the resulting prejudice to [plaintiff]

if the default judgment [was] vacated."  In that case,

> [b]y her own admission, [the defendant had] received the summons and complaint
> and other voluminous papers generated in [the] action.  Although [she] knew that
> she was subject to a judgment for money damages, she failed to appear in this
> action.  A default judgment was entered against [her] on March 30, 1987, and
> Notice of Entry of Default Judgment was served on [her] on April 10, 1987.  [The
> defendant] claim[ed] that she was "disabused of [her] mistaken notion" [that her
> interests would be protected by counsel for her co-defendants] when the default
> judgment was transferred for execution. . . . However, [the defendant] did not
> move the Court to vacate the default judgment until March 28, 1988, just two
> days prior to the expiration of the one year deadline imposed by Rule 60(b).

Id.  The court concluded that the defendant was "an 'essentially unresponsive party' who

willfully ignored the proceedings before this Court," and her behavior was "not the type of

nonculpable conduct for which relief under Rule 60(b) was appropriate."  Id. (quoting Sony

Corp. v. S.W.I. Trading, Inc., 104 F.R.D. 535, 540 (S.D.N.Y. 1985)).

---

[2] Although Mr. Fazzio informed Plaintiffs' counsel on January 17, 2013, that he was no longer
representing Bize, he told Plaintiffs' counsel that he would bring the post-judgment discovery
matters to Bize's attention.  (Id., Exs. G)

Here, Bize does not deny that he was served with the summons and complaint, the order to show cause, the notice of entry of default judgment, the post-judgment interrogatories, or the order to respond to post-judgment interrogatories. He knew that a default judgment had been sought against him, and any "mistaken notion" he might have had regarding his potential liability in the action was clearly dispelled when he was notified of the default judgment and sought the advice of counsel. Nevertheless, Bize waited until the day the one-year deadline was set to expire to move to vacate the judgment, ignoring ongoing proceedings before this Court in the meantime.

Bize has offered no valid excuse for his conduct. Although he mentions a surgery on October 3, 2012 (Bize Decl. (Dkt. No. 22) at ¶ 21), this action was filed on October 7, 2011, and the default judgment was entered on June 1, 2012. Similarly Bize's conclusory assertion that he has "been under extreme financial pressure" (id. at ¶ 19) does not justify vacating the default judgment. "Emotional and financial strife, without more, do not excuse the deliberate default of a properly served party." Willis v. Landamerica Onestop, Inc., No. 07 Civ. 3646 (DC), 2009 WL 2474624, at *2 (S.D.N.Y. Aug. 13, 2009). If Bize "required additional time to respond to [Plaintiffs' Complaint, motions, or interrogatories], he should have employed the proper procedure[,] which would have been to file an application for an extension of time." Long v. Carberry, 151 F.R.D. 240, 243 (S.D.N.Y. 1993) (holding that plaintiff's delay due to illness did not constitute "excusable neglect").

Bize's conduct was "more than merely negligent or careless"; it was blatantly willful. S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) ("[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not

satisfactorily explained."). This factor alone would justify denying Bize's motion to vacate. See Brien, 71 F.3d at 1078; Action S.A., 951 F.2d at 507.

### B.   Existence of a Meritorious Defense

As to the second factor, "to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, . . . but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" McNulty, 137 F.3d at 740 (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993)). Here, Bize has submitted a declaration in support of his argument that he has meritorious defenses to Plaintiffs' claims. (Dkt. No. 22) "The Court, of course, cannot make any credibility determinations at this stage. Rather, the Court merely identifies [whether] factual issues bearing on the merits exist. . . . [and whether] [t]he defendant[ ] [has] set forth more than conclusory denials to support [his] defense." MacEwen Petroleum, Inc. v. Tarbell, 173 F.R.D. 36, 40 (N.D.N.Y. 1997) (internal citation omitted).

### 1.   Wage Claims

Raymond alleges that he received no wages for work he performed in June and July 2011. (Cmplt. (Dkt. No. 1) ¶ 18) Debellis claims that she received no payment for work she performed "continuously and regularly" between May 15, 2011 and August 5, 2011. (Id. ¶ 20)

Bize states, however, that Raymond was "fired no less than three (3) times for failing to do his job in even the most basic ways." (Bize Decl. (Dkt. No. 22) ¶ 10) According to Bize, Raymond "inexplicably came back to work," even though Bize "never agreed to bring [Raymond] back on as an employee and add him to the payroll." (Id. ¶ 11) If Raymond was not, in fact, employed by Bize in June and July 2011, Raymond's wage claims would fail.

Bize claims that during the three months for which Debellis claims wages, she "worked for [another employer] full time" and "essentially did no work" for the Company. (Id. ¶¶ 16-17)  Bize also contends that Debellis's employment was not terminated. (Def. Br. (Dkt. No. 21) at 12)  Instead, Debellis "chose to stay on board on a voluntary basis once [she] was told the company was defunct and would probably be going out of business." (Id.)  If Debellis was not, in fact, working for the Company during the period for which she seeks wages, or if she was working as a volunteer, her wage claim would fail.

### 2.    Retaliation

Bize argues that Debellis's FLSA retaliation claim is defective in that she has not alleged that her "employment was terminated subsequent to filing a formal complaint."[3] (Def. Br. (Dkt. No. 21) at 3)  Bize also asserts that Debellis's employment was not terminated in August 2011 because – as previously discussed – Bize contends that she was working on a voluntary basis while the company was going out of business. (Id. at 12)  Finally, Bize contends that – if Debellis was terminated – her termination was justified because she was "insubordinate, did not do [her] job[ ], violated tardiness and attendance policies of the company, lost major accounts by being [a] 'no show[ ]' for important meetings . . ., and also took on full-time employment with another company during the period of time in question."[4] (Id. at 11-12)

---

[3] Bize also argues that he has a meritorious defense to Raymond's retaliation claim. (Def. Br. (Dkt. No. 21) at 11-12)  Raymond has made no retaliation claim, however. (Cmplt. (Dkt. No. 1) ¶¶ 39, 46)

[4] Bize claims that Debellis "frequently brought her boyfriend to work and spent hours socializing with him"; "frequently came in hours late and got into the habit of coming in at most twice . . . a week"; caused "delivery orders [to] repeatedly [go] out late, dramatically impacting sales"; missed a crucial meeting with a buyer that caused the Company to lose its contract with Macy's; and started working for another employer full-time while she was still employed by Bize. (Bize Decl. (Dkt. No. 22) ¶¶ 5, 7, 12, 14, 15-18)

Bize's challenge to Debellis's FLSA retaliation claim appears to have merit. Under the FLSA, it is illegal for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . ." 29 U.S.C. § 215(a)(3). The Second Circuit has held that "the plain language of [29 U.S.C. § 215(a)(3)] limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993).

Debellis concedes that she did not file a formal complaint with a government agency. (Pltf. Br. (Dkt. No. 25) at 2-5) She argues, however, that the Supreme Court's holding in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), abrogates Lambert. (Pltf. Br. (Dkt. No. 25) at 2)

In Kasten, the Supreme Court held that oral complaints to a government agency may "fall within the scope of the phrase 'filed any complaint' in the [FLSA's] antiretaliation provision." Kasten, 131 S. Ct. at 1336. However, the Court specifically declined to decide whether "the antiretaliation provision applies only to complaints filed with the Government [or extends to complaints filed with private employers]." Id.

Courts in this District have concluded that Kasten does not overrule Lambert:

[I]n Kasten[,] . . . the Supreme Court held that oral complaints to a government agency constitute protected activity under the FLSA, which courts had previously interpreted as applying only to written complaints made to a government agency. The Court specifically refrained from deciding whether the FLSA protects either oral or written complaints made informally to an employer.

As a result, the Second Circuit's rule holding that complaints to employers do not qualify as a protected activity controls – the FLSA applies only to "retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." [Where] [t]he only retaliatory

14

treatment alleged by [plaintiff] is her termination following her complaints to [supervisors] . . . [plaintiff] cannot make out a prima facie retaliation claim.

Hyunmi Son v. Reina Bijoux, Inc., 823 F. Supp. 2d 238, 243-44 (S.D.N.Y. 2011) (quoting Lambert, 10 F.3d at 55) ("[B]ecause [plaintiff's] complaints were made informally to her employer and not to a government agency, she did not engage in protected activity under the FLSA."); see also Duarte v. Tri-State Physical Med. & Rehab., P.C., No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012) ("[T]he [Supreme] Court [in Kasten] expressly refrained from deciding whether intracompany complaints may constitute protected activity under the statute, or whether, as held in Lambert, such complaints are outside of the statute's reach. Given this express reservation, the holding of Lambert vis-à-vis intracompany complaints remains binding precedent on this Court. . . . It is dispositive that [plaintiff] provides no indication that she ever complained of the alleged improper practices to a government authority prior to her termination.") (internal citations omitted). Because Debellis alleges that she was retaliated against for complaining to her supervisors – but not to a government agency – it appears that Bize has a meritorious defense to her FLSA retaliation claim.[5]

---

[5] This argument does not provide a defense to Debellis's retaliation claim under the New York Labor Law, however. "The anti-retaliation provision found in New York's Labor Law statute is less specific as to what form an employee's complaint to management must take to qualify for protection against retaliation." Higueros v. N.Y. State Catholic Health Plan, Inc., 526 F. Supp. 2d 342, 346 (E.D.N.Y. 2007). Under New York law,

> [n]o employer . . . shall discharge, threaten, penalize, or in any other manner . . . retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the Labor Law], . . . or (ii) because such employer . . . believes that such employee has made a complaint to his or her employer . . . that the employer has violated any provision of [the Labor Law]. . . .

15

Bize also argues that Plaintiff's termination was not the result of retaliation because (1) she was not actually "terminated," given that she had agreed to work as a volunteer while the Company was winding down, and (2) to the extent that she was terminated, it was for poor job performance. (Def. Br. (Dkt. No. 21) at 11-12)  If Debellis lost her position because the Company went out of business – as Bize alleges – that, of course, would be a defense to her retaliation claim. Bize's allegations regarding Debellis's deficient job performance – if proven – could also provide a defense. See Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("Once the plaintiff establishes a prima facie case of retaliation under [New York Labor Law] Section 215, the burden shifts to the defendant to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions. . . . The plaintiff must then persuade the finder of fact that the proffered explanation is pretextual."). In sum, as to Debellis's FLSA and New York Labor Law retaliation claims, Bize has demonstrated that he may have a meritorious defense.

### C.   Prejudice to Plaintiffs

Turning to the final factor – prejudice to Plaintiffs if the default judgment is vacated – "delay standing alone does not establish prejudice." Enron Oil Corp., 10 F.3d at 98. However, "a showing that 'delay may thwart plaintiff's recovery or remedy,' is sufficient." Saleh v. Francesco, No. 11 Civ. 438 (PKC), 2011 WL 5513375, at *5 (S.D.N.Y. Nov. 10, 2011) (quoting Green, 420 F.3d at 110 (internal quotations omitted)).  Courts in this Circuit have denied vacatur where a "plaintiff has shown that vacating default may hinder its ability to satisfy

---

N.Y. Labor Law § 215(1). Accordingly, Debellis's failure to file a complaint with a government agency does not provide Bize with a meritorious defense to her New York Labor Law retaliation claim.

a judgment if so awarded . . . [or] might give the defendant[ ] the opportunity to abscond with the few assets already reached by the plaintiff." <u>MacEwen Petroleum, Inc.</u>, 173 F.R.D. at 40.

Here, Bize alleges that – following the collapse of his company – he "is completely indigent and being sued by a multitude of parties . . . and desperately struggling to make a living so as to avoid bankruptcy." (Def. Br. (Dkt. No. 21) at 10) Given Bize's alleged economic distress and the "multitude" of claims against him, it is unclear whether Plaintiffs will be able to recover on any judgment obtained against him. In any event, Plaintiffs have not shown that the delay associated with Bize's failure to appear in this lawsuit has made it less likely that any judgment against him will be satisfied. Nor is there any evidence that Bize has absconded with assets.

**D.     <u>Whether Compelling Reasons Exist to Excuse Bize's Willful Default</u>**

The Second Circuit has instructed that a "default . . . justly characterized as willful . . . should be excused only for a compelling reason." <u>Wagstaff-EL v. Carlton Press Co.</u>, 913 F.2d 56, 57 (2d Cir. 1990). "Such a reason exists . . . [where] [the] action and the resultant judgment have no valid basis whatsoever." <u>Id.</u> Vacatur is warranted in such circumstances because "[a]llowing the default judgment to stand would . . . constitute[ ] a serious miscarriage of justice." <u>Id.</u> at 58. Where the action and judgment are "based on grounds of even minimally colorable validity, [however,] vacating the default judgment might [be] an abuse of discretion." <u>Id.</u> at 57. Even where a defendant "has presented a meritorious defense," a default judgment found to be willful should not be vacated unless the "complaint . . . evince[s] . . . frivolity." <u>See</u> <u>Heymann v. Brechner</u>, No. 95 Civ. 1329 (CSH), 1996 WL 580915, at *4 (S.D.N.Y. Oct. 9, 1996) (citing <u>Wagstaff-EL</u>, 913 F.2d at 57-58).

Here, Bize has demonstrated a compelling reason to vacate the default judgment as to Debellis's FLSA retaliation claim. As discussed above, Debellis's complaints to her supervisors are not sufficient to establish a retaliation claim under the FLSA. See Duarte, 2012 WL 2847741, at *3 ("It is dispositive that [plaintiff] provides no indication that she ever complained of the alleged improper practices to a government authority prior to her termination."). Given that Debellis has not pleaded facts demonstrating that she has a prima facie FLSA retaliation claim, Bize's motion to vacate the default judgment with respect to that claim will be granted. See Wagstaff-EL, 913 F.2d at 57-58 (vacating default judgment where plaintiff's "underlying claims were either facially invalid or utterly unsupported").

Bize has not, however, demonstrated that there is "no valid basis whatsoever" for Plaintiffs' wage claims or Debellis's New York Labor Law retaliation claim. As to the wage claims, Plaintiffs have alleged that Defendants hired them in June 2010 for specific positions at the Company; that they performed their assigned duties; that they were paid appropriately for five months; that Defendants then began paying them late or not at all; that Bize repeatedly promised Plaintiffs that they would be paid; and that Defendants did not pay Debellis any wages for work she performed between May 15, 2011 and August 5, 2011, and did not pay Raymond any wages for his work in June and July 2011. These allegations provide a factual basis for Plaintiffs' wage claims. See Lanzetta v. Florio's Enters., Inc., 763 F. Supp.2d 615, 618, 623 (S.D.N.Y. 2011), on reconsideration on other grounds, No. 08 Civ. 6181 (DC), 2011 WL 3209521 (S.D.N.Y. July 27, 2011) (finding employer liable for unpaid wages under FLSA and New York Labor Law where employer paid waitress no wages).

With respect to Debellis's New York Labor Law retaliation claim, she has alleged that she complained about her unpaid wages to Bize "at the very end of July[ ] 2011" and that

18

she was terminated soon after – on August 5, 2011 – in retaliation for her complaints. (Cmplt. (Dkt. No. 1) ¶ 23) Such circumstances provide a basis for a retaliation claim under the New York Labor Law. See Ting Yao Lin v. Hayashi Ya II, Inc., No. 08 Civ. 6071 (SAS) (AJP), 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted sub nom., Yao Lin v. Hayashi Ya II, Inc., No. 08 Civ. 6071 (SAS) (AJP), 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) (quoting Higueros, 526 F. Supp. 2d at 347) ("'In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result.' An informal complaint to an employer that the employer is violating a provision of the Labor Law suffices."). Because Plaintiffs have provided "grounds of [at least] minimally colorable validity" for their wage claims and Debellis's New York Labor Law retaliation claim, the default judgment as to these claims – with respect to liability – will not be vacated.

As to damages, however, Plaintiffs have not provided a factual basis for the relief they seek. The Complaint does not allege the compensation Plaintiffs were to be paid or the rate at which Plaintiffs were to be paid (i.e., hourly, weekly, or annually). Nor does the Complaint allege how many hours Plaintiffs had agreed to work each week. Plaintiffs have likewise not provided employment contracts, pay stubs, affidavits or other documents demonstrating the hours they worked, the compensation they were supposed to receive, or the compensation they did receive. These are basic elements of a wage claim under the FLSA and Labor Law. See Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *4 (S.D.N.Y. May 14, 2012) ("An employee seeking to recover unpaid wages has the burden of

19

proving that he performed work for which he was not properly compensated. While an employer

is required to maintain records of the persons employed by him and of the wages, hours, and

other conditions and practices of employment maintained by him, absent such documentation, an

employee may establish his right by relying on his recollection alone. The employee should not

speculate, but may rely on his present memory and recollection to carry the burden. [Even] [a]n

affidavit that sets forth the number of hours worked [may be] sufficient.") (internal quotations

and citations omitted). Because Plaintiffs have not pleaded facts in the Complaint demonstrating

the agreed-upon compensation, the hours they were expected to work, or the rate at which they

were to be paid, there is not a sufficient factual basis for the damages awarded on the wage

claims in the default judgment.

The factual basis for Debellis's alleged $500,000 in retaliation damages is

likewise unclear. Under the New York Labor Law. remedies for retaliation may include

> enjoining the conduct of any person or employer; ordering payment of liquidated
> damages, costs and reasonable attorneys' fees to the employee by the person or
> entity in violation; and, where the person or entity in violation is an employer,
> ordering rehiring or reinstatement of the employee to his or her former position
> with restoration of seniority or an award of front pay in lieu of reinstatement, and
> an award of lost compensation and damages, costs and reasonable attorneys' fees.
> Liquidated damages shall be calculated as an amount not more than ten thousand
> dollars. The court shall award liquidated damages to every employee aggrieved
> under this section, in addition to any other remedies permitted by this section.

New York Labor Law § 215(2)(a).

Given that the Company allegedly went out of business at about the time of

Debellis's alleged termination, it does not appear that she could recover for front pay. Moreover,

by statute, an award of liquidated damages may not exceed $10,000. To the extent Debellis

seeks damages for emotional harm, an award of $500,000 would vastly exceed what is typically

awarded in this District for emotional harm associated with retaliation. See Ting Yao Lin, 2009

WL 289653, at *8 (quoting Fowler v. N.Y. Transit Auth., No. 96 Civ. 6796 (JGK), 2001 WL

83228, at * 13 (S.D.N.Y. Jan. 31, 2001)) ("'Courts performing reviews of jury verdicts in discrimination and retaliation cases have noted that with "so-called "garden variety" mental anguish claims, . . . awards hover in the range of $5,000 to $30,000.'") (applying this analysis in calculating damages for retaliation claim under New York Labor Law § 215).

        Plaintiffs' failure to provide any factual support for the damage award set forth in the default judgment constitutes a compelling reason to vacate the default judgment as to Plaintiffs' damages claims. Cf. Wagstaff-EL, 913 F.2d at 57 (vacating default judgment where "the calculation of damages was preposterous"). The default judgment will be vacated as to damages, and the matter will be referred to the assigned magistrate judge for the purpose of conducting an inquest into Plaintiffs' damages. To the extent Bize seeks to vacate the default judgment as to liability for the wage claims and Debellis's New York Labor Law claim, however, his motion will be denied. See Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (noting that an inquiry as to damages may be appropriate even where a default judgment on liability has properly been entered).

## CONCLUSION

For the reasons stated above, Bize's motion is granted to the extent that the default judgment is vacated as to (1) Debellis's FLSA retaliation claim; and (2) Plaintiffs' claims for damages.  The motion to vacate is denied as to liability for Plaintiffs' wages claims and Debellis's retaliation claim under the New York Labor Law.  The Clerk of the Court is directed to terminate the motion (Dkt. No. 20).  This matter will be referred to the assigned magistrate judge for purposes of conducting an inquest on damages related to Plaintiffs' wage claims and Debellis's New York Labor Law retaliation claim.

Dated: New York, New York
      March 19, 2014

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge